AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA

12/21/20
JULIA C. DUDLEY, CLERK
BY: Allison Rust
DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.   1:20MJ161
Facebook account information associated with )
JERRY DAVID INGLE )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location)*:  Facebook account information associated with JERRY DAVID INGLE that is stored at a premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, CA. Attachment A further clarifies the property to be seached.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of   21   U.S.C. §  846/841(a)(1)  , and the application is based on these
facts:                                                                                    & 841(a)(1)
See Attachment C

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me ~~and signed in my presence~~. telephonically.

Date: 12/21/20

*Judge's signature*

City and state:   Abingdon, Virginia

Pamela Meade Sargent, USMJ
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to Facebook account information associated with Facebook account number is 100011492221849 and Facebook vanity URLs www.facebook.com/david.ingle.9277, www.facebook.com/david.ingle.3958, www.facebook.com/david.ingle.9440, www.facebook.com/david.ingle.79656, www.facebook.com/david.ingle.353, www.facebook.com/david.ingle.71465, www.facebook.com/david.ingle.798, www.facebook.com/david.ingle.942, www.facebook.com/david.ingle.102, www.facebook.com/david.ingle.7169, www.facebook.com/david.ingle.146, www.facebook.com/david.ingle.589583, www.facebook.com/ingle.ingle.71465, and www.facebook.com/davidingle.940 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.    Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each username/user ID/Facebook vanity URL/account number listed in Attachment A:

A.

1. All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

2. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

3. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

4. All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

5. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

6. All "check ins" and other location information;

7. All IP logs, including all records of the IP addresses that logged into the account;

8. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

9. All information about the Facebook pages that the account is or was a "fan" of;

10. All past and present lists of friends created by the account;

11. All records of Facebook searches performed by the account;

12. All information about the user's access and use of Facebook Marketplace;

13. The types of service utilized by the user;

14. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

15. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

16. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

B. All records and other information (not including the contents of communications) relating to the Account, including:

1. Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

3. Records of any Facebook accounts that are linked to the Account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the Account).

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841, and 21 U.S.C. § 846 involving Jerry INGLE for each username/user ID/Facebook Vanity URL/account number identified on Attachment A, information, data, photographs and exchanges pertaining to the following matters:

(a) The illicit manufacturing, distribution, or dispensing, or possession with intent to manufacture, distribute, or dispense, a controlled substance. Evidence indicating how and when the Facebook account was accessed or used, to determine the

chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(d) The identity of the person(s) who communicated with the user ID about matters relating to the aforementioned offenses, including records that help reveal their whereabouts and identities.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

I, Brian Snedeker, being duly sworn, hereby depose and state that the following is true and correct to the best of my knowledge and belief:

## INTRODUCTION AND AFFIANT'S BACKGROUND

1.   I make this affidavit in support of an application for a search warrant for information associated with a particular Facebook vanity URL (Uniform Resource Locator) and Facebook account number that is stored at the premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The property/information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 United States Code (U.S.C.) §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with Facebook account number is 100011492221849 and Facebook vanity URLs www.facebook.com/david.ingle.9277,
www.facebook.com/david.ingle.3958, www.facebook.com/david.ingle.9440,
www.facebook.com/david.ingle.79656, www.facebook.com/david.ingle.353,
www.facebook.com/david.ingle.71465, www.facebook.com/david.ingle.798,
www.facebook.com/david.ingle.942, www.facebook.com/david.ingle.102,
www.facebook.com/david.ingle.7169, www.facebook.com/david.ingle.146,

www.facebook.com/david.ingle.589583, www.facebook.com/ingle.ingle.71465, and www.facebook.com/davidingle.940.

2. I am an investigative law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (29) years. During my employment I have received comprehensive and specialized classroom training from the Drug Enforcement Administration in narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the illicit smuggling, cultivation, manufacturing, and trafficking of controlled substances and controlled substance precursors. I have also attended numerous conferences and lectures featuring government attorneys and law enforcement officials and have participated in some of the aforementioned conferences as a guest lecturer specifically in regards to Title III wire intercept investigations.

4. During my tenure as a DEA Special Agent, I have investigated and participated in the investigations of organized criminal groups violating federal drug trafficking laws. As part of my official duties, I have utilized traditional investigative techniques including visual surveillance, interviewing of witnesses, execution of search warrants, use of cooperating witnesses, seizure of drug evidence, controlled purchases of drug evidence, court authorized pen registers, court authorized interceptions of wire communications, and the federal grand jury. I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices,

methods, and general behavior of criminal groups engaged in drug trafficking activities. I have personally participated in numerous Title III wire intercept investigations involving large scale drug trafficking organizations and importers of controlled substances.

5. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized drug trafficking groups, including their use of cellular telephones and digital display paging devices, and the use of numerical codes and code words to conduct their transactions. I have participated in numerous investigations concerning the illicit distribution of controlled substances and the concealment of related proceeds. During the aforementioned investigations, the identification of co-conspirators was often accomplished by utilizing/reviewing drug ledgers, electronic communications, telephone toll records, telephone bills, photographs, and financial records. These investigations resulted in the arrests of individuals who have illicitly imported, smuggled, received, and/or distributed controlled substances, and the seizure of controlled substances and the proceeds from the sale of these controlled substances.

## STATEMENT OF PROBABLE CAUSE

6. This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of this matter. The facts set forth in this affidavit are known to me as a result of my investigation to the methamphetamine trafficking related activities of Jerry INGLE (Jerry David INGLE) and information provided to me by other law enforcement officers.

7. During the last (30) days, Jerry INGLE admitted to law enforcement that he recently accompanied individuals on a road trip that resulted in the acquisition of approximately

(2) ounces of methamphetamine (a quantity consistent with distribution/redistribution) from outside the Smyth County, Virginia area that was then brought back into Smyth County, Virginia (located within the Western District of Virginia). INGLE also admitted that he had helped an individual obtain methamphetamine and further claimed that he communicated via Facebook in regards to helping said person obtain methamphetamine.

8. A review of Jerry INGLE's criminal history revealed his multiple felony convictions for distribution of methamphetamine during 2018. Jerry INGLE is currently on active probation/supervision in relation to the aforementioned felony convictions and has a 4th Amendment waiver while on active probation/supervision.

9. Jerry INGLE's known Facebook account number is 100011492221849 and his known Facebook vanity URLs are www.facebook.com/david.ingle.9277, www.facebook.com/david.ingle.3958, www.facebook.com/david.ingle.9440, www.facebook.com/david.ingle.79656, www.facebook.com/david.ingle.353, www.facebook.com/david.ingle.71465, www.facebook.com/david.ingle.798, www.facebook.com/david.ingle.942, www.facebook.com/david.ingle.102, www.facebook.com/david.ingle.7169, www.facebook.com/david.ingle.146, www.facebook.com/david.ingle.589583, www.facebook.com/ingle.ingle.71465, and www.facebook.com/davidingle.940.

10. This affiant's training and experience, as documented above in Paragraphs 3 through 5, has provided this affiant with the knowledge and insight to recognize methods used by narcotics traffickers and money launderers to conceal their drugs, assets, income, and overall activities from law enforcement personnel and other persons. As this affiant has conducted Title III wire intercept investigations and reviewed numerous text messages between narcotics

traffickers and their customers/sources of supply/co-conspirators in multiple investigations, he is familiar with the fact that drug traffickers frequently use coded language to describe illegal drugs and proceeds. Furthermore, this affiant is aware that drug traffickers use cellular telephones/smartphones/smart devices/computers and applications installed on those devices to coordinate the illicit acquisition and distribution of controlled substances with their suppliers, transporters, and customers. This affiant also knows that drug traffickers routinely maintain the names/telephone numbers/addresses of their associates (sources of supply/customers/co-conspirators) and this information is routinely written down in address books, notebooks, pieces of paper, and stored in the electronic "phonebooks" of cellular telephones/smartphones or in the installed applications that are often remotely accessible on either smart devices or computers. Drug traffickers often conceal and/or store the names/telephone numbers/addresses of their sources of supply/customers/co-conspirators for easy retrieval and use.

11. This affiant is also aware that drug traffickers often employ the use of multiple cellular telephones/smartphones/smart devices/computers to carry out their illicit narcotics business. It is not uncommon for narcotics traffickers to compartmentalize the various facets of their business in an effort to thwart law enforcement's attempt to investigate them. To that end, drug traffickers may have multiple communication devices for each facet of the activities of the organization or for communicating with various subgroups or individuals within an organization. As an example, a narcotics trafficker may employ one device for transportation, another for distribution, and yet another to communicate business involving the illegal proceeds of the business. Drug traffickers will also employ the use of multiple electronic applications on cellular telephones/smartphones/smart devices/computers to conduct business. Such applications include the use of navigational/geo-location applications (often utilized by narcotics traffickers to provide directions to meeting/transaction locations) and texting/chat/message applications (often

employing multiple text/chat/message applications on a single device; used to coordinate narcotics trafficking transactions) such as Facebook Messenger and WhatsApp.

12. This affiant is aware through his training and experience that drug traffickers often attempt to conceal their identity and methods of communication by utilizing cellular telephones/smartphones that are either prepaid or bought under fictitious names. Due to the nature of electronics, large volumes of data can be saved on smartphones/smart devices themselves and be almost instantly erased, either intentionally or through loss of battery power at certain times. Although said data may be erased/lost from the devices themselves, it is commonplace for the data to be stored and maintained (backed up) by a cellular provider or a computer application's owner or platform supporter such as Facebook.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

13. This affidavit is in support of an application for a warrant to search Facebook account information linked to Facebook account number is 100011492221849 and Facebook vanity URLs www.facebook.com/david.ingle.9277, www.facebook.com/david.ingle.3958, www.facebook.com/david.ingle.9440, www.facebook.com/david.ingle.79656, www.facebook.com/david.ingle.353, www.facebook.com/david.ingle.71465, www.facebook.com/david.ingle.798, www.facebook.com/david.ingle.942, www.facebook.com/david.ingle.102, www.facebook.com/david.ingle.7169, www.facebook.com/david.ingle.146, www.facebook.com/david.ingle.589583, www.facebook.com/ingle.ingle.71465, and www.facebook.com/davidingle.940 (hereafter referred to as "SUBJECT ACCOUNTS") that is stored at a premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

14. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## INFORMATION RELATED TO THE OPERATION OF FACEBOOK

15. Facebook Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can

exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20. Facebook allows users to upload photos and videos, which may include metadata (such as location information) that the user transmitted when he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.

When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. This service is called "Facebook Messenger." These chat communications are stored in the chat history for the account. Facebook also has video and audio calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

27. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

28. Facebook also has a Marketplace feature, which allows users to post free classified ads.

29. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

30. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends'

Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

31.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

32.     When a device such as a computer is first used to log into a Facebook account, Facebook assigns that device a unique identifier and places a cookie (a "machine cookie") containing that identifier on the machine. This machine cookie is subsequently associated with every Facebook account that is logged into from that machine and allows Facebook to track which accounts have been accessed from a given device. Facebook can disclose a list of accounts that have been accessed from the same device(s) as a target Facebook account to law enforcement upon receipt of a 2703(d) order or a search warrant. This information can help to identify other Facebook accounts belonging to the user of the target account. This may be particularly useful when the target account used by the suspect bears a false name and law enforcement is attempting to determine the suspect's true identity and/or the suspect possesses multiple Facebook accounts to further his criminal enterprise. The suspect may have logged into his "actual" Facebook account, which contains his real name or other identifying information, from the same device that he used to log into the target account. In such cases, a list of accounts linked to the target account by machine cookie will contain the suspect's "actual" Facebook account. However, it is important to

note that not every account linked to the target account by machine cookie will necessarily have been used by the subscriber of the target account.

33. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account numbers). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP

addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Lastly, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## CONCLUSION

Based upon the foregoing facts and information, I believe that there is probable cause that evidence of violations of Title 21, United States Code, Sections 841 and 846 could be found in the SUBJECT ACCOUNTS maintained by Facebook, Inc.

## REQUEST FOR SEALING

It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing these documents is necessary in order to prevent the disclosure of information relating to an ongoing criminal investigation. Based upon my training and experience, I have learned that, criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online through online forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness as well as the safety of confidential sources and/or undercover officers.

Respectfully submitted,

_____        12-21-2020
Brian Snedeker, Special Agent              Date
Drug Enforcement Administration

Subscribed and sworn to before me, telephonically this the 21st day of December 2020 in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia

Reviewed by:

  /s/Daniel J. Murphy                           12/18/2020
Assistant United States Attorney                  Date